IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MICHAEL W.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 18-cv-02192-DGW[2] |
| | ) |
| COMMISSIONER of SOCIAL SECURITY, | ) |
| | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM and ORDER

**WILKERSON, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff, represented by counsel, seeks judicial review of the final agency decision denying his application for Supplemental Security Income (SSI) benefits pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff filed an application for SSI in April 2015, and later filed an application for both Child's Insurance Benefits (CIB) and Disability Insurance Benefits (DIB) in June 2015. In each filing, plaintiff alleged disability as of September 23, 1980. During the evidentiary hearing, plaintiff elected to amend his alleged onset date of disability to April 30, 2015, effectively withdrawing his claims for CIB and DIB. After holding the evidentiary hearing, the Administrative Law Judge (ALJ) denied the application on February 7, 2018. (Tr. 121-133). The

---

[1] Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c) and Administrative Order No. 240. See, Docs. 10, 18.

Appeals Council reviewed the record and adopted the ALJ's findings, making the decision of the ALJ the final agency decision. (Tr. 4-7). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

## Issues Raised by Plaintiff

Plaintiff raises the following points:

1. The ALJ erred by failing to build a logical bridge between the evidence presented and his decision to give significant weight to medical opinions and no special weight to others.

2. The ALJ did not adhere to SSR 96-8p when he ignored and misstated evidence in his conclusion.

## Applicable Legal Standards

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the plaintiff is disabled. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001). A

negative answer at any step, other than at step 3, precludes a finding of disability. *Ibid.* The plaintiff bears the burden of proof at steps 1–4. *Ibid.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Ibid.*

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921

(7th Cir. 2010), and cases cited therein.

## The Decision of the ALJ

The ALJ followed the five-step analytical framework described above. He determined that plaintiff had not worked at the level of substantial gainful activity since the alleged onset date. The ALJ found that plaintiff had severe impairments of generalized anxiety disorder (GAD), panic disorder, social phobia, depressive disorder (DD), and personality disorder.

The ALJ found that plaintiff had the RFC to perform work at all exertional levels, limited to understanding, remembering, and carrying out instructions for simple tasks on a sustained basis in a work setting requiring no contact with the general public and no more than occasional, brief contact with coworkers and supervisors for the completion of work tasks. In addition, the ALJ wrote that plaintiff was able to tolerate occasional changes in the routine work setting and could tolerate work-related responsibilities for purposes of simple tasks. Based on the testimony of a vocational expert (VE), the ALJ concluded that plaintiff did not have any past relevant work, but he was able to do jobs which exist in significant numbers in the national economy.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff.

1. **Agency Forms**

Plaintiff was born in 1978 and was 36 years old on the alleged onset date.

(Tr. 302). Plaintiff submitted a function report stating that he suffered from panic attacks, had poor concentration, could not stay on task, and could not function independently in a work setting. (Tr. 384). He said that he lived at home with his father and stayed isolated in his room. (Tr. 384-385, 388). He reported the ability to drive a car, take out the trash, take care of a household pet, prepare simple meals, and grocery shop once or twice a month. (Tr. 385-387). Plaintiff claimed that he got along poorly with authority figures. In fact, plaintiff reported that he was fired or laid off for having arguments with co-workers and bosses at two different workplaces. He stated that he handled stress and changes in routine poorly, along with having the feelings of constant paranoia and dread. (Tr. 390).

2. **Evidentiary Hearing**

Plaintiff said that he had completed the 11th grade and later received his diploma through alternative testing. (Tr. 21-22). He stated that he had mental and emotional problems that affected his ability to work. Plaintiff claimed he had problems controlling his levels of stress, became easily frustrated, and had emotional breakdowns. (Tr. 25). Plaintiff reported difficulty concentrating and irregular sleep patterns. (Tr. 25, 29).

Plaintiff said that he had worked as a substitute custodian under the supervision of his father, but when his father retired, plaintiff also left his job. (Tr. 23-24). Plaintiff stated that he had never used a vocational rehabilitative service and admitted to a gap in his mental health treatment from 2009 to 2015. (Tr. 24, 26). He further admitted to preparing simple meals, helping with yard work, grocery shopping, and doing household cleaning. (Tr. 30-31).

A VE also testified. As there is no issue as to her testimony, it will not be summarized.

### 3. Medical Records

Plaintiff began suffering from depression, anxiety, and attention deficit hyperactivity disorder during childhood. (Tr. 535, 541, 838). Describing the genesis of his problems, he reflected back to his early years, stating, "I lost my cat when I was a kid. It got killed in a dryer when I was 7. That's around the time I started noticing stuff." (Tr. 534). Plaintiff then began seeing mental health professionals for treatment. Plaintiff dropped out of school in the 11th grade, and later took a test to graduate from high school. He had theft-related legal problems when he was around 16 years of age. Plaintiff claimed 2 psychiatric hospitalizations, in 1996 and 2008. (Tr. 778, 838). He cut his wrists several times in his late teens. (Tr. 453, 838).

After a large gap in treatment, plaintiff began outpatient treatment at Clay County Hospital with Advanced Practice Registered Nurse Jeanne Holdren and Licensed Clinical Social Worker Teresa Boose, who together worked with plaintiff. In his first visit in July 2015, according to Boose, plaintiff presented as severely anxious and almost manic. Plaintiff was diagnosed with GAD and DD. Boose also noted that plaintiff refused to take his prescription for Haloperidol because he was concerned about the side effects. (Tr. 541-542). In an August 2015 visit, Holdren opined that plaintiff was sabotaging himself by researching his medications online and finding reasons not to comply with his drug regimen. (Tr. 551). Plaintiff continued to make improvements to varying degrees throughout 2015 through

adherence to medications and talk therapy. (Tr. 561, 572, 590, 596).

Jerry Boyd, Ph.D., performed a consultative psychological exam in October 2015. Dr. Boyd opined that the plaintiff suffered from DD, GAD, and an avoidant type personality disorder. Dr. Boyd found that the plaintiff was capable of understanding and following moderately complex instructions; was very distractible and furtive; and very socially uncomfortable and avoidant with exacerbated anxiety in crowds. Dr. Boyd also found that the plaintiff had a severely reduced stress tolerance and would be overwhelmed in a typical work environment. (Tr. 537).

Plaintiff continued to see Boose and Holdren at Clay County Hospital in 2016. Plaintiff, at times, showed progress, but overall, the severity of his symptoms continued to hamper his results. This difficulty extended to his depression, which became amplified at times. Adherence to his medication regimen continued to be problematic. (Tr. 757, 766, 775, 822, 864, 906). Plaintiff also completed a psychological evaluation with Boose in February 2016. (Tr. 607). Boose found that plaintiff had no limitations in his ability to understand and remember short and simple instructions, but did have mild limitations in his ability to understand and remember detailed instructions. (Tr. 605). She further found that plaintiff had moderate to extreme limitations in concentration and persistence; extreme limitations in social interaction; and marked to extreme limitations in the area of adaptation. (Tr. 605-607). In a side note adjacent to the adaptation questions, she remarked that plaintiff would be unable to sustain employment for a month. (Tr. 606-607).

Plaintiff saw Dr. Eugene Kostiuk, a psychiatrist, in June and July 2016. Throughout his handful of visits with Dr. Kostiuk, plaintiff complained of sleeplessness, high anxiety, moderate depression, and trembling. (Tr. 616, 618, 620, 622). Plaintiff also stated that he refused to take his Depakote because it had a "black box warning" and "could cause death." (Tr. 620). Dr. Kostiuk recommended plaintiff admit himself to the psychiatric ward, but plaintiff was anxious and ambivalent about it during the appointment, eventually refused, and stopped seeing Dr. Kostiuk afterwards. (Tr. 622, 906, 1005).

Plaintiff continued to see Boose and Holdren at Clay County Hospital in 2017. Plaintiff's symptoms appeared to either stagnate or get worse throughout the year, with continually intensifying and more frequent anger appearing throughout the notes. (Tr. 1076, 1123, 1136, 1164). Boose noted during one therapy session that the severity of plaintiff's illness posed challenges to long-term success. (Tr. 1099). Holdren theorized that plaintiff could be suffering from intermittent explosive disorder. (Tr. 1169).

### 4. State Agency Consultants' RFC Assessments

In November 2015, acting as a state agency consultant, Dr. Howard Tin, Psy.D., assessed plaintiff's mental RFC based on a review of the file materials. (Tr. 50-55). He stated that the plaintiff had a moderate limitation in the ability to carry out detailed instructions, a moderate limitation in the ability to maintain attention and concentration for extended periods, a moderate limitation in the ability to work in coordination with or in proximity to others without being distracted by them, a moderate limitation in the ability to interact appropriately with the general public,

and a moderate limitation in the ability to set realistic goals or make plans independently of others. (Tr. 53-54). He also noted no evidence of a limitation regarding plaintiff's ability to respond appropriately to changes in the work setting. (Tr. 54). In the section entitled "MRFC-Additional Explanation," however, Dr. Tin wrote that plaintiff "does not handle stress nor changes in routine well." (Tr. 55)

In March 2016, acting as a state agency consultant, Dr. Erika Gilyot-Montgomery, Psy.D., assessed plaintiff's mental RFC based on a review of the file materials. (Tr. 84-89). Dr. Gilyot-Montgomery opined that the plaintiff had a moderately limited ability to carry out detailed instructions, a moderately limited ability to maintain attention and concentration for extended periods, a moderately limited ability to work in coordination with or proximity to others without being distracted by them, a markedly limited ability to interact appropriately with the general public, a moderately limited ability to accept instructions and respond appropriately to criticism from supervisors, a moderately limited ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and a moderately limited ability to respond appropriately to changes in the work setting. (Tr 87-89).

## Analysis

Plaintiff argues that the ALJ misstated and ignored evidence in his RFC findings that would undermine his conclusion, thereby failing to build a logical bridge between evidence and conclusion that plaintiff was not disabled. In assessing a plaintiff's RFC, an ALJ must consider all relevant evidence in the case record and evaluate the record fairly. *Golembiewski v. Barnhart,* 322 F.3d 912,

917 (7th Cir. 2003); 20 C.F.R. § 404.1545 (a)(1) and (3). While the ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to his findings. *Ibid.* (citing *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001) and *Zurawski,* 245 F.3d at 888). Otherwise, it is impossible for a reviewing court to make an informed review. *Golembiewski,* 322 F.3d at 917 (citing *Smith v. Apfel,* 231 F.3d 433, 438 (7th Cir. 2000)).

Plaintiff's arguments prevail. First, the ALJ misstated evidence in his decision. After wrongly stating that plaintiff saw Dr. Kostiuk in May 2016, the ALJ stated that "claimant reported his medications were working," which is not a note attributable to Dr. Kostiuk. (Tr. 129). That note was actually from the Clay County Hospital records in May 2016.

Second, the ALJ made blanket claims about medical findings in his decision that are inaccurate. In his assessment of the findings of state agency consultant Dr. Gilyot-Montgomery, the ALJ wrote that "[o]n reconsideration, Erika Gilyot-Montgomery, Psy.D., largely agreed with Dr. Tin's findings. . . ." (Tr. 130). In actuality, Dr. Gilyot-Montgomery and Dr. Tin had different adaptation limitation findings and Dr. Gilyot—Montgomery went further in her assessment of plaintiff's social interaction limitations.

Third, the ALJ gave faulty reasoning in his attempt to give little weight to the opinions of Boose in her mental RFC of plaintiff. While Boose gave plaintiff extreme limitations and marked limitations in the areas of social interaction and adaptation, Boose and Holdren both witnessed and noted plaintiff's escalating explosive anger. Although the ALJ stated that these opinions were largely based

on the subjective complaints of plaintiff, they were likely based on in-person observations of plaintiff's behavior in session. (Tr. 131).

Fourth, the ALJ did not acknowledge the fact that one of the state agency consultants, Dr. Tin, contradicted himself in his assessment. In one place, Dr. Tin stated that plaintiff "does not handle stress nor changes in routine well" and in another place he stated that plaintiff had no limitation in his ability to respond appropriately to changes in work settings. Despite this, the ALJ gave Dr. Tin's opinions significant weight, calling into question his judgment in assigning weight to the medical evidence in the record.

Looked at singularly, these pieces of evidence may not be fatal. However, when the evidence is looked at together, a pattern does emerge. It appears that the ALJ left some evidence out that corroborated plaintiff's claims to increase the plausibility of his conclusion. This Circuit has rejected that approach. See, *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009).

The lack of evidentiary support in this case requires remand. "If a decision 'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (internal citation omitted).

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that plaintiff was disabled during the relevant period, or that he should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

### Conclusion

The Commissioner's final decision denying plaintiff's application for social security disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATE:   October 17, 2019.**

**DONALD G. WILKERSON
U.S. MAGISTRATE JUDGE**